IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

MICHAEL RODGERS,                    : CIVIL ACTION NO. 07-3613
            Plaintiff              :
                                   :
        v.                         : Philadelphia, Pennsylvania
                                   : January 8, 2009
CURRAN-FROMHOLD CORRECTIONAL        : 3:10 o'clock p.m.
FACILITY, et al.,                   :
            Defendants             :
. . . . . . . . . . . . . . . .

            TELEPHONE CONFERENCE
    BEFORE THE HONORABLE JAN E. DUBOIS
    SENIOR UNITED STATES DISTRICT COURT JUDGE

- - -

APPEARANCES:

For the Plaintiff:      MICHAEL RODGERS, PRO SE
                        GW-9911
                        1600 Walters Mill Road
                        Somerset, PA   15510

For the Defendants:     NIYA L. BLACKWELL, ESQUIRE
                        City of Philadelphia Law Department
                        1515 Arch Street
                        Philadelphia, PA   19107

- - -

Audio Operator:         Andrea Mack

Transcribed by:         Tracey J. Williams, CET

(Proceedings recorded by For the Record Gold digital sound
recording; transcript produced by AAERT-certified
transcriber.)

- - -

1       (The following telephone conference occurred at 3:10

2  o'clock p.m.:)

3       THE COURT:  This is Judge DuBois.  Good afternoon.

4       MS. BLACKWELL:  Good afternoon, your Honor.

5       THE COURT:  I call the case of Michael Rodgers v.

6  the City of Philadelphia and Corrections Officer Samuels,

7  Civil Action Number -- let me get it -- 07-3613.

8       MS. BLACKWELL:  Yes.

9       THE COURT:  We have scheduled a preliminary pretrial

10 conference today, we're going to conduct it by telephone.  I

11 am transcribing the conference, this is all being recorded, I

12 have an electronic sound recording operator in chambers.  So

13 there will be a record of what is said at the conference, it

14 will be transcribed.

15      All right.  First, I gather I have Mr. Rodgers --

16 can you hear me, Mr. Rodgers?  Hello?

17      MR. RODGERS:  Yes.

18      THE COURT:  I can barely hear you.

19      MS. BLACKWELL:  He said yes, but it's hard for you

20 to hear.

21      THE COURT:  You're going to have to speak up, Mr.

22 Rodgers.

23      MR. RODGERS:  Yes.

24      THE COURT:  Yes.  And I have Ms. Blackwell

25 representing the City and Corrections Officer Samuels?

1          MS. BLACKWELL:  Yes, your Honor.

2          THE COURT:  What we're going to do is schedule the

3     entire case.  There are two pending motions, a motion for

4     appointment of counsel, number one, and, number two, a motion

5     to compel discovery, and I'm going to address those motions

6     as well.

7          I noted, Ms. Blackwell, that the City has not yet

8     filed an answer?

9          MS. BLACKWELL:  To the motion to compel?

10         THE COURT:  To the complaint.

11         MS. BLACKWELL:  To the complaint?  Oh, but I believe

12    we -- I'm sure we did.

13         THE COURT:  You didn't --

14         MS. BLACKWELL:  Oh, you know, this case was

15    transferred to me by another attorney and I'm going to look

16    at the files to make sure he answered.  It was initially

17    Kevin --

18         THE COURT:  Well --

19         MS. BLACKWELL:  -- I'm looking to make sure the

20    answer is in there, but you're saying on the record there's

21    no answer?

22         THE COURT:  I don't see a record of an answer having

23    been filed.

24         MS. BLACKWELL:  Kevin Hubbard was -- Matthew Kevin

25    Hubbard was initially --

1          THE COURT:  Yes, he entered his appearance in July,

2    July 21st.

3          MS. BLACKWELL:  Right, right.

4          THE COURT:  There was a motion to amend the caption,

5    that motion was granted.

6          MS. BLACKWELL:  Yes.

7          THE COURT:  I'm sorry, there is an answer to the

8    complaint, I don't have it.

9          MS. BLACKWELL:  Oh.

10         THE COURT:  It wasn't served on me and we didn't

11   pull it off ECF, but --

12         MS. BLACKWELL:  But there is an answer.

13         THE COURT:  Are there any unusual --

14         MS. BLACKWELL:  Yes, I'm looking at an answer.

15         THE COURT:  I'm looking at it.  Are there --

16         MS. BLACKWELL:  Okay.

17         THE COURT:  -- well, I'm looking at the docket.

18         MS. BLACKWELL:  Okay.

19         THE COURT:  Are there any unusual affirmative

20   defenses?

21         MS. BLACKWELL:  No.

22         THE COURT:  All right.  Well, at the outset, I read

23   the complaint as stating that there were three separate

24   assaults, two on -- maybe three on one day -- yes, April 3rd,

25   2006, and that Defendant was transported -- well, first he

1  was taken to the dispensary at CFCF and then he was taken

2  Frankford Hospital.  Is that correct, according to your

3  records, Ms. Blackwell?

4  　　　　MS. BLACKWELL:  I just, your Honor, put the

5  complaint away, I apologize for that; I had it out and it's

6  been a while since I've read that and the answer.

7  　　　　THE COURT:  Well, you don't have to --

8  　　　　MS. BLACKWELL:  Okay.

9  　　　　THE COURT:  -- the bottom line, there's some pretty

10  serious allegations, and including allegations of being

11  shackled and then maced and beaten --

12  　　　　MS. BLACKWELL:  Somehow, I don't recall seeing -- a

13  lot of those things that I have are all -- are handwritten.

14  In terms of the complaint, it didn't in any of my paperwork

15  -- sometimes the pro se inmates, they use the set form.

16  　　　　THE COURT:  No, the complaint is a complaint, it's

17  typed.

18  　　　　MS. BLACKWELL:  The complaint?  I'm looking in my

19  file, your Honor, and I apologize for --

20  　　　　THE COURT:  You could not have answered something if

21  you didn't have the --

22  　　　　MS. BLACKWELL:  No, you answer it, but I'm saying in

23  terms of detail.  Okay, I do have it, it's just that it --

24  yeah, it did say shackled while he was being maced between --

1          THE COURT:  Well, it says he was first assaulted for

2    failing to go to his cell on April 3rd in the morning, 9:30

3    a.m.

4          MS. BLACKWELL:  Yes.

5          THE COURT:  Then it says he went to the infirmary at

6    the --

7          MS. BLACKWELL:  At Paragraph 2, yes.

8          THE COURT:  -- yes, in Paragraph 2.  And it says

9    later on April 3rd he was again assaulted for demanding

10   medical attention, and it goes on to say that he was shackled

11   while being maced, beaten with closed fists, that was

12   apparently the second incident on the 3rd, and then at 11:59

13   p.m. he was again assaulted, according to the complaint,

14   after being taken to the receiving room, where he was

15   stripped of his clothing, placed in a padded cell and beaten,

16   and then he was taken to Frankford Hospital.

17         MR. RODGERS:  Your Honor, I would also add that I

18   was also taken to...

19         THE COURT:  I can't hear you, Mr. Rodgers.  Speak

20   up.

21         MR. RODGERS:  I also want to add, I was also taken

22   -- taken to, I believe it's the House of Corrections or it's

23   the Detention Center, I was put in the psychiatric ward, and

24   that consisted of me being strapped to a bed also and being

25   administered medicines without my consent.

1          THE COURT:  Well, they were treating you, Mr.

2     Rodgers --

3          MR. RODGERS:  I had no --

4          THE COURT:  -- that's not -- that's -- well, it

5     doesn't appear to be in the complaint, although that doesn't

6     mean it's not in the case.  I'm just reviewing the complaint.

7          What, if anything, have you done about an

8     investigation, Ms. Blackwell?

9          MS. BLACKWELL:  Well, I was still in the process of

10    answering the plaintiff's first set of interrogatories and

11    production of that, and then we were going to go from there,

12    in the process of -- it's a little more difficult for us, we

13    get police paperwork a little more speedy than we do from the

14    prison.  So that's where I am.  I believe you spoke with our

15    chair of argument couple weeks ago and just asked him to

16    remind me to make sure when I get these documents that I do

17    send them to plaintiff.

18         THE COURT:  I don't know that I did, I certainly

19    didn't talk to --

20         MS. BLACKWELL:  Or someone from the chambers.  He

21    just -- that was just what he relayed to me, I spoke with --

22    he was probably there on another matter perhaps, but that's

23    where I am, your Honor.  I did answer what I could and I have

24    let the plaintiff know that we're requesting some of the

25    documentation that he's requesting and, if it's not

1  objectionable, we will forward it and then I will begin to
2  conduct more of my investigation.
3        THE COURT:  Well, I noted that in your conference-
4  information report you requested a settlement conference
5  before a magistrate judge and I wondered, before we go ahead
6  and schedule the case, what you had in mind, like when.
7        MS. BLACKWELL:  In terms of the dates?  I think I
8  wrote -- I'm looking at what I sent to you, I wrote after,
9  but you said when could I be ready --
10        THE COURT:  March 8th?
11        MS. BLACKWELL:  -- March 8th, yes.
12        THE COURT:  Well, what I -- I have two motions, one
13  we're -- well, we're going to address the discovery motion,
14  but another motion to appoint counsel, and I should think
15  that this case can be quick -- you can quickly determine
16  whether it's a liability case.
17        MS. BLACKWELL:  Yes.
18        THE COURT:  And appointment of counsel slows things
19  down dramatically and, if you're interested in settlement and
20  the plaintiff is interested in settlement, maybe we can
21  arrange a settlement conference without delaying the case as
22  long as it will be delayed to appoint counsel.  If you want
23  to wait until March 9th or March 8th, that's two months from
24  now, I don't think that will work.
25        MS. BLACKWELL:  Okay.  Well, I don't have any

1   problem with a more speedy settlement conference.  Again, I'm

2   still in that investigation stage.

3          THE COURT:  Well, if you're there, then you're not

4   really prepared to --

5          MS. BLACKWELL:  That's correct, the latter is

6   correct, your Honor.

7          THE COURT:  Have you told the City what you think

8   the case is worth, Mr. Rodgers?

9          MR. RODGERS:  No, I didn't.

10          THE COURT:  Have you made -- have you come to any

11   decision yourself?

12          MR. RODGERS:  Not -- not myself, I was going to give

13   the defendants a chance to send something --

14          THE COURT:  To what?

15          MR. RODGERS:  To send something, you know --

16          THE COURT:  Well, normally it works the other way

17   around, the plaintiff says what he thinks the case is worth.

18          MR. RODGERS:  It says on the complaint, on the

19   initial complaint, I put unliquidated damages and --

20          THE COURT:  Well, that doesn't say anything, because

21   that just means damages of an undetermined nature.  You want

22   money damages, but you haven't quantified, you haven't put a

23   dollar sign on them.  In some cases, the inmates want a great

24   deal of money and most cases generally don't get settled, in

25   other cases the inmates are reasonable; the same is true of

1    plaintiffs who are not inmates.  Are you prepared to tell us

2    what you want for the case now or do you want to wait on

3    that?

4          MR. RODGERS:  With all due respect, if you did

5    settle -- I mean, I'm sorry, your Honor -- stated a date for

6    a settlement conference?

7          THE COURT:  No.  The City said in its papers, which

8    you should have gotten, that they will be ready for a

9    settlement conference after March 8th.

10          MR. RODGERS:  I didn't get those papers.

11          MS. BLACKWELL:  No, he didn't get that.  I faxed it

12    to your chambers, your Honor, and I just mailed it to him.

13          THE COURT:  Okay.  Well, you'll get it and in that

14    document, it's called a conference-information report, Ms.

15    Blackwell says several things.  She says discovery is not

16    completed, she's going to provide supplemental responses to

17    your interrogatories.  She says, with regard to settlement,

18    yes to a conference before a magistrate judge, and she says

19    she'll be ready after March 8th.  And then she says the case

20    will be ready for trial April 8th and she says it will take

21    -- I don't understand this -- one to two days to try her case

22    and one to two days to try the --

23          MS. BLACKWELL:  Right, I should have just put one

24    day for my case and then the full trial probably one to two

25    days, your Honor.  Probably one day will be sufficient,

1   but...

2          THE COURT:  One day, including picking a jury,

3   charging a jury, presenting evidence?  No.

4          MS. BLACKWELL:  Well, that's why I put one to two

5   days, I don't think it will go beyond --

6          THE COURT:  Yes, but you said that for your case and

7   the whole case, but in any event -- and that doesn't make

8   sense.

9          MS. BLACKWELL:  No, your Honor, I can't guesstimate

10  for the other party.

11         THE COURT:  Well, but the long and the short of it,

12  that's what is set forth in this document you don't have.  It

13  sounds like we'll have to go through with a schedule, but

14  before we do I want you to tell us what happened, Mr.

15  Rodgers, just tell us so that I get some idea of how these

16  incidents came about.

17         MR. RODGERS:  Again, I said I was -- I was put in

18  administrative detention --

19         THE COURT:  For what reason?

20         MR. RODGERS:  For the reason of I had an altercation

21  with my celly in the jail, a cellmate of mine.

22         THE COURT:  And the first assault was while you were

23  in administrative detention?

24         MR. RODGERS:  Yes, sir.

25         THE COURT:  And was it provoked?

1    MR. RODGERS:  Say that again, sir?

2    THE COURT:  Was it provoked?  In other words, did

3    you do anything?

4    MR. RODGERS:  No -- well, for the first incident?

5    THE COURT:  Yes.

6    MR. RODGERS:  We had a disagreement about, you know,

7    just personal cell issues and I was taken to the -- again,

8    the administrative detention.  And, when I was at the

9    administrative detention, maybe like two hours into my stay

10   there, I was told to move to a different cell.  I didn't get

11   to the cell on time enough and they said I was taking -- I

12   was taking too long and I refused to get into my cell.

13   THE COURT:  You refused?

14   MR. RODGERS:  That's what was said, I refused.  I

15   guess not being, you know, in -- you know, in a timely manner

16   of getting to my cell.

17   THE COURT:  And then what happened?

18   MR. RODGERS:  And then a couple words were

19   exchanged, I was instructed by the officers.  I didn't resist

20   in any manner.  There was a lot of -- it was a lot of

21   profanity being used just out of frustration, but the more,

22   you know, I used profanity, the more I was hit.  I was then

23   taken to the infirmary.  On that day, when the second shift

24   came on, you know, I had injuries, I had cuts and bruises and

25   things, and so I was complaining a lot.  I kept hitting the

1   -- they have a button, a call button in the cell and I kept

2   hitting the call button, you know, to get medical attention.

3   So, a guard came, you know, to the door.  Again, words were

4   exchanged.  They opened -- they opened the cell door -- I

5   can't open the cell door -- they opened the cell door.  About

6   two officers at that time stepped in.  And when I could come

7   to, because I believe I was knocked unconscious, I was being

8   dragged out of the cell with handcuffs -- with handcuffs,

9   still being maced, taken to the infirmary.  Again, I was only

10  given -- every time I went to the infirmary, pictures were

11  logged in.

12          THE COURT:  Every time you went to the infirmary

13  what?

14          MR. RODGERS:  Pictures were taken by the nurses.

15  They cleaned up my wounds -- you know, at this point, I was

16  -- I had a substantial amount of wounds on my face, my head.

17  That night, I guess someone or a nurse decided that I

18  shouldn't be in the jail, I had to seek medical attention,

19  that's when I was taken to the infirmary -- I'm sorry, the --

20  what is it? -- the receiving room.  And I was stripped of my

21  clothing, because at that point I had a jumpsuit on, I was

22  stripped of all my clothing, I was put in a smock.  At that

23  time, again, words were exchanged out of frustration, I was

24  being beaten again.  I was then tooken (sic) out of the

25  hospital, it was late -- late -- I'm sorry, early in the

1  morning, maybe around, like, 1:00 or 2:00 o'clock in the

2  morning, I was taken to Frankford Medical.  There I received

3  no medical treatment --

4          THE COURT:  What were your injuries?

5          MR. RODGERS:  My injuries?  I had a lot of gashes in

6  my head, my face, I had marks from the handcuffs being --

7  when I was dragged, I had all types of bruises, my eyes, both

8  of them, like, they were both black.  I mean, they have

9  pictures of everything.

10          THE COURT:  Who -- you have pictures or the --

11          MR. RODGERS:  No, the jail should have pictures of

12  everything.

13          THE COURT:  All right.  Well, that's enough of

14  background.

15          Have you seen the photographs, Ms. Blackwell?

16          MS. BLACKWELL:  No, I haven't been provided with

17  anything like that.

18          THE COURT:  Have you received the records of the

19  dispensary?

20          MS. BLACKWELL:  No, that's what we requested.

21          THE COURT:  Have you received the records of

22  Frankford Hospital?

23          MS. BLACKWELL:  No.  We have requested all of those

24  things and that's what I'm waiting on.

25          THE COURT:  How did you request the Frankford

1 Hospital records?

2 MS. BLACKWELL: Well, when we request -- well, that

3 was just something I gave to a paralegal, but from the prison

4 we have to go through an additional person, one person that

5 gets information from the various prisons for us, I have to

6 go through another person.

7 THE COURT: Well, what about an authorization? You

8 can't get Frankford Hospital --

9 MS. BLACKWELL: No, no -- well, that's just --

10 whenever we need authorized medical reports and we don't get

11 them from plaintiff, as we can in this case, we give the

12 assignment to a paralegal, I have to check on that paralegal.

13 I just give them the case number, what information I have,

14 and then they get back to me with what they need to do.

15 THE COURT: And you have no idea what's been done

16 or --

17 MS. BLACKWELL: No. I can check on that again, your

18 Honor. I was on vacation for the holiday.

19 THE COURT: You're not really ready for this

20 conference, are you?

21 MS. BLACKWELL: I didn't think that it would take

22 beyond the 60 days that I have asked for to complete these

23 things that I am discussing with you, your Honor, that's why

24 I said 60 days and after that; I didn't anticipate that it

25 would be beyond that point.

1    THE COURT:  Well, what's your -- you didn't

2  anticipate that you would be questioned about the case, I

3  mean, you don't have any of the answers.

4    MS. BLACKWELL:  Well, yes, you're right, your Honor.

5    THE COURT:  Well, is this your first Federal

6  preliminary pretrial conference?

7    MS. BLACKWELL:  No, not at all, not at all.

8    THE COURT:  Well, I --

9    MS. BLACKWELL:  I just didn't think we were at this

10  stage, I apologize, in this particular case.

11    THE COURT:  Well, I don't know what stage the

12  discovery --

13    MS. BLACKWELL:  And I have had conference calls with

14  you a lot, your Honor.

15    THE COURT:  Pardon me?

16    MS. BLACKWELL:  I have had many Rule 16s and

17  conference calls with you, your Honor.

18    THE COURT:  Well, as far as this one is concerned,

19  you've really got to work the file.

20    MS. BLACKWELL:  Yes, I agree, we do, your Honor.

21    THE COURT:  Well, I'm not so sure you've done it.

22  Have you requested the photographs?

23    MS. BLACKWELL:  No, I haven't.

24    THE COURT:  Well, I direct that you get them and

25  provide copies to the plaintiff.  I direct that you get the

1   records of the dispensary and provide them to the plaintiff.

2   I direct that you get the records, I guess they would be

3   incident reports --

4            MS. BLACKWELL:  Yes.

5            THE COURT:  -- I'm not sure what else they would

6   be --

7            MS. BLACKWELL:  Okay.

8            THE COURT:  -- all records of disciplinary action

9   against the plaintiff.

10           MS. BLACKWELL:  Yes, your Honor, and I need to call

11  in the correctional officer for an interview.

12           THE COURT:  What about the disciplinary records

13  against any correctional officers?

14           MS. BLACKWELL:  That's something that I need to do

15  as well.

16           THE COURT:  And you'll have to produce those as

17  well.

18           MS. BLACKWELL:  Yes.

19           THE COURT:  How long do you think it will take?

20           MS. BLACKWELL:  That's some of the things that I put

21  in my answer that we -- you know, as soon as we get this

22  information, it will be provided.

23           I'm sorry, I cut you off.  Yes, how long will it

24  take for these matters?

25           THE COURT:  Yes.

1            MS. BLACKWELL:  I anticipate it being, you know,

2     within the next two months, within those 60 days, being able

3     to get the stuff returned to me.  And if for some reason in a

4     couple weeks it would take a long time, I would be notified

5     by our contact at the prison.

6            THE COURT:  I'm looking at the -- at what you said

7     in your answers to interrogatories and motion to -- well,

8     what you say is you've requested the documentation and will

9     provide upon receipt.

10           MS. BLACKWELL:  Yes, and that's what I am saying

11     today.

12           THE COURT:  And I'm just looking to see what was

13     requested, that's Interrogatory 3.  "A copy of any and all

14     documents showing who was on duty in Unit A-1, Cell Block 3,

15     at approximately 7:00 a.m."  Well, you need -- you're going

16     to produce more than that.

17           MS. BLACKWELL:  I do have some of the...

18           THE COURT:  Pardon me?

19           MS. BLACKWELL:  I was just looking in my file at

20     what I do have that I did get back from the prison, but this

21     would probably not be helpful today, what I do have.

22           THE COURT:  Well, the plaintiff -- we'll go through

23     that discovery motion in a bit, but for now I'm directing

24     that you produce, you obtain and produce copies of the

25     photographs, the records of the dispensary for the incident

1  in question or the incidents in question --

2              MS. BLACKWELL:  Yes.

3              THE COURT:  -- the records of the correctional

4  facility regarding the plaintiff's discipline, and the

5  records of any disciplinary action against the guards,

6  correctional officers, for this series of incidents.

7              How do you propose to get the Frankford Hospital

8  records?

9              MS. BLACKWELL:  We subpoena them.

10             THE COURT:  All right.  You'll subpoena them --

11             MS. BLACKWELL:  Yes.

12             THE COURT:  -- you can do that, make copies

13  available to plaintiff as soon as you get them.

14             MS. BLACKWELL:  Yes.

15             THE COURT:  All right, that's just as a starter.

16  Now we'll schedule discovery and everything else, it won't

17  take very long, and I'll then address the two motions.

18             My thought is that we ought to give you four months

19  to complete discovery.  If you want a deposition and Mr.

20  Rodgers wants a deposition or depositions, it might be hard

21  to schedule.  So, we'll give you four months, that will take

22  us to May.  Discovery, May... we'll make it May 8th.

23             What about an issue of disclosure, have you provided

24  it?

25             MS. BLACKWELL:  Uh... no.

1          THE COURT:  How long will it take you to provide it?

2          MS. BLACKWELL:  I can give him right now what I

3     have.

4          THE COURT:  All right.  Well, we'll give you --

5          MS. BLACKWELL:  I can send it out tomorrow or next

6     week.

7          THE COURT:  -- we'll give you a week to do that.

8     Today is the 8th, we'll make it January 15th.

9          MS. BLACKWELL:  Yes.

10         THE COURT:  I don't believe this is a case where

11    expert witnesses will be used, at least at this juncture.  Do

12    you agree, Mr. Rodgers?

13         MR. RODGERS:  I would like to state, I was visited

14    by Internal Affairs.  I also was charged with the crime of

15    aggravated assault, I was -- the deposition (sic) of the

16    case, it was thrown out of court.

17         THE COURT:  Did it go to court or was it handled

18    administratively?

19         MR. RODGERS:  I'm sorry?

20         THE COURT:  Did it go to court or was it handled at

21    SCI -- at either CFCF or --

22         MR. RODGERS:  It went to court.  I actually got

23    recharged with a different crime, I was -- I was put in

24    administrative hold for -- they would say administration for

25    about approximately four months.  So, I was segregated from,

1 like, everything, just by myself for four months.

2      THE COURT:  Well, you'll need to produce the records

3 of that criminal proceeding.  Ms. Blackwell?

4      MS. BLACKWELL:  Yes.

5      THE COURT:  Well, I'm talking about -- the question

6 didn't have anything to do with that, but I'm glad you filled

7 us in.  I don't think this is a case where you're going to

8 call expert witnesses, but we'll -- so, we won't schedule

9 that.

10      If discovery ends May 8th, we'll next turn to the

11 filing of dispositive motions, motions for summary judgment,

12 and we'll give you two weeks after May 8th.  In a motion for

13 summary judgment, Mr. Rodgers, the defendant says the Court

14 should enter judgment as a matter of law and you would have

15 to respond to that.  We'll make that May 22nd and the

16 response will be due three weeks thereafter, that takes us to

17 June 12th.

18      MR. RODGERS:  Your Honor, can I ask respectfully, is

19 there -- will there be assistance?  I know you said that you

20 were going to grant assistance of counsel.

21      THE COURT:  I didn't say that.

22      MR. RODGERS:  I'm sorry.

23      THE COURT:  I said I was going to decide after we

24 get this schedule in place.  This schedule will tell me how

25 much time we need to do certain things, I haven't yet decided

1  that and, if I decide to appoint counsel, we'll put this

2  schedule on hold and I'll just issue this order with the same

3  time frames when counsel is appointed.

4        Do you think you will be able to present this case

5  yourself, Mr. Rodgers, or do you think you need counsel?

6        MR. RODGERS:  I believe I need counsel.

7        THE COURT:  The problem with counsel is it will slow

8  it down dramatically.  You're at Somerset, counsel will be

9  here.  It doesn't work very well, it will take months and

10  months.

11        MR. RODGERS:  Well, in that case, I'm prepared to --

12  I believe I can handle it myself.

13        THE COURT:  Well, it sounds like -- if you get into

14  trouble, all you have to do is tell me.  And, if I deny the

15  motion for counsel now and you have trouble handling the

16  case, all you have to do is write me a letter and send a copy

17  to Ms. Blackwell and I'll reconsider.  But the last case we

18  tried to appoint counsel, it took well over a year, and you

19  seem to be handing this very well.  And what is significant

20  to me is Ms. Blackwell has said she wants a settlement

21  conference and we'll go -- we'll see about that, but she

22  wants a settlement conference.  So, she's interested in

23  resolving this case and it would be better to do it sooner

24  rather than later.  Now, if you decide you want a lawyer to

25  help you evaluate the case and to help you with discovery --

1  I was impressed with your interrogatories and your motion,

2  but if you need help -- I think what I'm going to do now is

3  deny the motion without prejudice, which means you can renew

4  it if you get into trouble.  Do you understand what I'm

5  saying?

6            MR. RODGERS:  Well, if I can ask --

7            THE COURT:  Speak up.

8            MR. RODGERS:  -- if I can ask, will they set -- will

9  the defendant's counsel set a date for a settlement

10  conference?  Because --

11           THE COURT:  I will set that.

12           MR. RODGERS:  Okay.  And I'm in full agreement to do

13  that.

14           THE COURT:  Well, how it will be done -- and it will

15  be -- I can't set a date now, because I have no idea what

16  will be going on at SCI Somerset --

17           MR. RODGERS:  Okay.

18           THE COURT:  -- but what we'll do is we will refer

19  the case to a magistrate judge --

20           MR. RODGERS:  Okay.

21           THE COURT:  -- and he will conduct --

22           MS. BLACKWELL:  I am sorry, before you -- can I

23  rescind or retract that request for the settlement

24  conference?  Because I -- just based upon what I'm hearing

25  today and some of the investigative work that I need to do,

1   perhaps I was a little premature in agreeing to -- or

2   requesting a settlement conference.

3           THE COURT:  Well, unless the facts are dramatically

4   different than they are in the complaint -- well, what we do

5   is we refer the case to a magistrate judge in the future, it

6   won't happen now --

7           MS. BLACKWELL:  Yes.  Sometimes they will -- you

8   know, if it's, like, before, for instance, Caracappa, they'll

9   ask us, you know, to do it right away or to make contact, I

10  don't know who is -- who your magistrate is -- sometimes I

11  know I've had to write to the magistrate judge so that we can

12  speedily get on their calendar.

13          THE COURT:  Well, what we'll do is pick a date --

14  you're telling me you're retracting something that you've

15  said and that's -- there's nothing wrong with that -- we'll

16  pick a date by which you write to me and tell me whether you

17  think a settlement conference might be of assistance --

18          MS. BLACKWELL:  Thank you.

19          THE COURT:  -- in resolving the case.

20          MS. BLACKWELL:  Yes, your Honor.

21          THE COURT:  We'll pick that date before we finish.

22          MS. BLACKWELL:  Okay.

23          THE COURT:  And how the settlement conference will

24  work, if we have one and I think we'll have one in this case,

25  I will refer it to Chief Magistrate Judge Rueter, he'll have

1   Ms. Blackwell in his chambers and he will have you on video.

2   Somerset has a video hookup.  So, you'll be able to see what

3   goes on in his chambers and he'll be able to see you.  Do you

4   understand that?

5            MR. RODGERS:  Yes, sir.

6            THE COURT:  If I decide to appoint counsel, if you

7   come back and tell me you really need counsel and I agree to

8   do that, then your lawyer would be here, but we would hook it

9   up in such a way that you could talk to him privately.  I'm

10   not sure just how that would work, maybe by cell phone, but

11   you would be able to talk to your lawyer privately if I

12   appoint counsel.  For now, I'm not going to appoint counsel,

13   but I -- as I said two or three times, if you find that you

14   can't handle the case, it's too hard, you don't know enough

15   about the law, then ask me again to appoint counsel.  Do you

16   understand that, Mr. Rodgers?

17            MR. RODGERS:  Yes, sir.

18            THE COURT:  Okay.  All right.  We have motions for

19   summary judgment and the response is due by June 12th.  I

20   want some time to decide the motion, that will take us to

21   July, into August.  The next thing we will schedule...

22   exhibits.  I want you to mark and exchange exhibits, exhibits

23   or documents that you'll use in the case, and the date for

24   that will be August... we'll make it August 3rd.

25        Next, pretrial memos.  Now, for the plaintiff, it

1  will be easy.  And all this will be written, you'll get a

2  copy of it.  I want a summary of the facts on which the

3  claims are based and you can get that from the complaint.  B,

4  I want a statement of the claim liability of the defendants

5  in which you tell me exactly what, it would be Corrections

6  Officer Samuels did.  Then I want a list of witnesses and a

7  list of exhibits.  For the defendant, I want a regular

8  pretrial memorandum.  Pretrial memos will be due August 10th

9  for the plaintiff -- I'm -- yes, August -- we'll make it

10  August 17th and August 24th for the defendant, and we'll put

11  the case on the trial list August 31st.

12       Now, I want you to tell me, Ms. Blackwell, a date by

13  which you think you will have enough information to know

14  whether you want a settlement conference.

15       MS. BLACKWELL:  The date which I should send you the

16  letter, your Honor?

17       THE COURT:  Yes, and I'll tell you what to say in

18  the letter.

19       MS. BLACKWELL:  Okay.

20       THE COURT:  I call it settlement reporting date.

21       MS. BLACKWELL:  Okay.  Could I have 90 days?

22       THE COURT:  90 days would be -- our discovery period

23  ends May 8th, 90 days would be April 8th.  All right, April

24  8th.  That's the date when you tell me the case is or is not

25  settled and, if not settled, you tell me whether you think a

1  magistrate judge conference, settlement conference, might be

2  of assistance.

3          MS. BLACKWELL:  Yes.

4          THE COURT:  All right.  The rest of the order

5  relates to documents that are needed at trial.  And the

6  documents at trial are proposed voir dire questions for the

7  jury, proposed points for charge, proposed verdict slip and a

8  trial memorandum, I'm going to order that be -- that the

9  defendants file those things.  You need not file them, Mr.

10  Rodgers; if I appoint counsel for you later we'll change

11  that, but you need not, I'll take care of those things for

12  you.

13          All right, that takes care of the schedule and it

14  will be in writing, so you'll have it.  Do you have any

15  questions about it, Mr. Rodgers?  Mr. Rodgers?

16          MR. RODGERS:  Yes, sir.

17          THE COURT:  Any questions about the schedule?

18          MR. RODGERS:  No, sir.

19          THE COURT:  All right.  Now, I'm looking at the

20  discovery motion.  Plaintiff wants the name and address of

21  every person who has knowledge of the facts relevant to this

22  case.  There's no problem with that, Ms. Blackwell?

23          MS. BLACKWELL:  Well, I believe I asked and I'm

24  happy to get out my -- that the defendants usually

25  communicated through counsel, meaning through me, that we

1　wouldn't be providing a correctional officer's address.

2　　　　THE COURT:  No, you don't have to do that, but name.

3　　　　MS. BLACKWELL:  Names, yes, that's no -- I believe I

4　furnished that.

5　　　　THE COURT:  Well, I'm not so sure.  You've spent so

6　much time talking about objections.  Let me just look --

7　　　　MS. BLACKWELL:  I have to get --

8　　　　THE COURT:  -- at reservation of rights.  You

9　mentioned one, Corrections Officer Samuels; is he the only

10　one?  He was the only officer involved?  I think you better

11　-- well, I'm going to --

12　　　　MS. BLACKWELL:  Judge, he's the only main defendant.

13　　　　THE COURT:  That doesn't --

14　　　　MS. BLACKWELL:  I'm sure there were others involved,

15　but I still needed to get back the paperwork to see who was

16　on the shift and those kind of things.

17　　　　THE COURT:  I'm granting the motion as to

18　Interrogatory 1, deleting the address.  No addresses, just

19　names.

20　　　　Interrogatory 2, "Identify and attach a copy of any

21　and all documents relating to prison medical center staff,

22　training and education."  That's too broad.

23　　　　MS. BLACKWELL:  Actually, your Honor, I think we're

24　-- okay, you're reading from the interrogatories, because he

25　listed his production of documents first.  So, we were

1  reading from Number 1.  Number 2?

2          THE COURT:  Yes.

3          MS. BLACKWELL:  "Identify and attach a copy of any

4  and all documents relating to" -- okay.

5          THE COURT:  I don't think that's relevant, this is

6  not a malpractice case.  So, the motion is denied.

7          3, "Identify and attach a copy of any and all

8  documents showing who was on duty."  I'm granting 3.  That's

9  the -- again, this is interrogatories.

10          MS. BLACKWELL:  I will go to the --

11          THE COURT:  Now, the motion to compel the documents

12  production.  What is your answer -- well, you've said you

13  will produce what he has requested in 1 --

14          MS. BLACKWELL:  Yes.

15          THE COURT:  -- and I've already directed that.

16          MS. BLACKWELL:  1 and 2, actually.

17          THE COURT:  Grant -- yes -- and, 2, grant.  3,

18  "Investigation and findings."  3, grant.

19          "Rules, regulations and policies of the Department

20  of Corrections about treatment of prisoners who sustain

21  injuries by assault."  I'm going to grant that as well.

22          And, lastly, "Information regarding transfer reports

23  to an outside hospital."

24          MS. BLACKWELL:  We said that would be provided.

25          THE COURT:  Okay, grant that too.

1          All right.  And I'll give you -- how much time do

2    you think you need to do this?

3          MS. BLACKWELL:  For this particular response?

4          THE COURT:  Yes.

5          MS. BLACKWELL:  Within this 90-day period, but -- I

6    think it should be less than that, but you've given us until

7    May 8th for our discovery, correct?

8          THE COURT:  Yes, but I'm directing that these

9    documents be produced --

10         MS. BLACKWELL:  As soon as possible.

11         THE COURT:  -- and these answers to interrogatories

12   be provided.

13         MS. BLACKWELL:  Okay.  I could say by mid to the end

14   of February, no later?

15         THE COURT:  Well, if he wants to take depositions,

16   that takes -- that's' a problem.  We'll give you --

17         MS. BLACKWELL:  But I thought we could have the

18   depositions within that discovery period between now and the

19   8th.

20         THE COURT:  We'll give you 45 days to produce --

21         MS. BLACKWELL:  The written --

22         THE COURT:  -- the documents and the answers to

23   interrogatories.

24         MS. BLACKWELL:  Okay.

25         THE COURT:  I don't think there's anything else that

we need do now.  It looks to me, if there was an assault, of

course there's always going to be an argument that it was

provoked and you'll have to decide, Ms. Blackwell, whether

that evidence is realistic, you'll have to look at the

pictures and see whether there was any evidence of

overreaction or provocation is something you're going to rely

on your witnesses for.

MS. BLACKWELL:  Yes.

THE COURT:  But hopefully the case will be resolved.

Mr. Rodgers, do you have anything you wish to tell

me now, anything you wish to add?

MR. RODGERS:  (Inaudible) everything --

THE COURT:  Speak up.

MR. RODGERS:  No, sir, not at this time.

THE COURT:  All right.  I'm going to issue two

orders, a scheduling order and an order ruling on your motion

to compel discovery, and a third order denying without

prejudice your motion for appointment of counsel.  Keep in

mind, and I'll put this in the order, that if it turns out

that you find it difficult to handle the case yourself, you

should file or write to me and tell me that you would like me

to reconsider appointing counsel.  Do you understand that?

MR. RODGERS:  Yes, sir.

THE COURT:  Okay.  Ms. Blackwell, do you have

anything else?

1          MS. BLACKWELL:  No, I don't, your Honor.

2          THE COURT:  All right.  Well, then I'll end the

3    conference.  Keep in mind that we are recorded, so that

4    everything I have said, everything you have said is going to

5    be recorded and there will be a transcript filed.

6          Do you want a copy of that transcript, Mr. Rodgers?

7          MR. RODGERS:  Yes, sir.

8          THE COURT:  Fine, I'll provide you with one.

9          All right.  On that note, we'll end the conference.

10   Thank you both very much.

11         MS. BLACKWELL:  Thank you, your Honor.

12         THE COURT:  And, Mr. Rodgers, thank the people at

13   Somerset --

14         MR. RODGERS:  Yes.

15         THE COURT:  -- for setting this up.  Usually they

16   have a case manager with the inmate.  Is there anyone with

17   you?

18         MR. RODGERS:  Yes, my counselor is with me.

19         THE COURT:  Well, tell your counselor I thank him

20   very much for working with us in setting up this conference.

21         MR. RODGERS:  He thanks you as well.

22         THE COURT:  Have a good day both of you.

23         MS. BLACKWELL:  Thank you, your Honor.

24         MR. RODGERS:  Thank you.

25         (Conference concluded at 4:03 o'clock p.m.)

<u>CERTIFICATION</u>

I hereby certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

Geraldine C. Laws, CET      Dated 1/19/09
Laws Transcription Service